UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

Eastern District of Kentucky
FILED
MAY 07 2025
AT FRANKFORT
Robert R. Carr
CLERK U.S. DISTRICT COURT

CRIMINAL ACTION NO. 5:25-CR-03-01-GFVT

UNITED STATES OF AMERICA     PLAINTIFF

V.     **PLEA AGREEMENT**

SERAFIN BAYONA     DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Counts 1 and 2 of the Information, charging violations of 18 U.S.C. § 1589(b), Financially Benefitting from Forced Labor. Pursuant to Rule 11(c)(1)(C), the United States and the Defendant agree to a specific sentence. Pursuant to Rule 11(c)(4), if the Court accepts this plea agreement, the agreed disposition will be included in the judgment.

2. The essential elements of Counts 1 and 2 of the Information, charging a violation of 18 U.S.C. § 1589(b), are:

> (a) The Defendant benefited, financially or by receiving anything of value;
>
> (b) The financial benefit resulted from participation in a venture which provided or obtained labor or services by one or a combination of the following prohibited means: force, threats of force, physical restraint, or threats of physical restraint to that person or another person; serious harm or threats of serious harm to that person; the abuse or threatened abuse of law or legal process; or a scheme, plan or pattern intended to cause the person to believe that if that person did not perform such labor or services that person or another person would suffer serious harm or physical restraint;

(c) The defendant either knew or was in reckless disregard of the fact that the venture was engaged in the providing or obtaining of labor or services by such means.

3. As to the offense charged in Counts 1 and 2 of the Information, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

(a) BAYONA participated in a venture to financially benefit from the forced labor of others. In order to facilitate this venture, BAYONA offered to facilitate the victims, all Mexican nationals then living in Mexico, to enter the United States illegally. BAYONA would loan victims the money required to be smuggled into the United States. BAYONA would then coordinate the smuggling of the victims into the United States and arrange for transportation to Lexington, Kentucky, where victims would be housed in one of several properties maintained by BAYONA.

(b) The victims would repay BAYONA after they obtained work in the United States, with interest added to their debt. BAYONA also charged victims numerous other fees, including, but not limited to, fees for rent, transportation, cleaning, food, clothing, and the obtaining of employment and false identification documents.

(c) Specifically, Victims 1 and 2 contracted with Bayona to pay a group of "coyotes" to facilitate their crossing the U.S./Mexico border. They were then transported to Kentucky. Upon arrival in Kentucky, BAYONA obtained fake identification papers for Victims 1 and 2 and found jobs for them. Victims 1 and 2 were required to work every day of the week and provide their checks from working to BAYONA. BAYONA charged Victims 1 and 2 $500 each for rent, $300 for their phone, $500 for food, $500 for rides to and from work, and other expenses which left very little money to be paid towards their debt. BAYONA also charged Victim 1 a fee of $1,200 dollars for obtaining a job for him.

(d) After several months of constant work, Victim 1 told BAYONA he was too tired to continue to work without rest. BAYONA then put a pistol to Victim 1's head and threatened to kill Victim 1 if he didn't work two jobs and pay off his debt. Victim 2 was present and witnessed BAYONA threaten the life of Victim 1 if he failed to continue to work to repay his debt.

(e) BAYONA also threatened family members of Victims 1 and 2, who were living in Mexico. WhatsApp messages from Bayona specifically threatened that "no matter where you or your family go I will find them," "I am going to take away what you care about most," "too bad you didn't think about your kids," and "prepare yourself because there is going to be nowhere for you to hide, not even your family in Mexico."

(f) BAYONA benefitted financially by requiring Victims 1 and 2 to pay him money they obtained from work to cover excessive fees charged for loan repayment, interest, rent, securing a job, obtaining fraudulent identifications, transportation, food, and transportation, and other items. During the execution of search warrants at properties maintained by BAYONA, over $50,000 in cash was discovered, which BAYONA admits was generated through his participation in the forced labor venture.

(g) BAYONA admits that, on or about the times alleged in the Information, he knowingly participated in a venture to obtain and provided labor from individuals, including Victims 1 and 2, through use of threats of force to Victim 1 and 2 or another person; serious harm or threats of serious harm to Victims 1 and 2; and a plan or pattern intended to cause the person to believe that if that person did not perform such labor or services Victim 1 and 2 or another person would suffer serious harm or physical restraint. BAYONA admits that these threats of force and serious harm included threats not only to Victims 1 and 2, but also to their family members. BAYONA admits that his conduct occurred in Fayette County, in the Eastern District of Kentucky, and elsewhere.

4. The statutory punishment for Counts 1 & 2 is imprisonment for not more than 20 years imprisonment, a $250,000 fine and supervised release of not more than 3 years. A special assessment of $100.00 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. The United States and the Defendant agree to the following specific sentence, which binds the Court upon acceptance of this plea agreement.

 (a) The Defendant's sentence of imprisonment shall be 135 months.

 (b) The Defendant's term of supervised release shall be 3 years.

(c) The Defendant will owe a $200 special assessment.

(d) The Defendant will pay restitution as ordered at the time of sentencing.

6. The Defendant waives the right to appeal the guilty plea, conviction, and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

7. The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status because he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the Defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

8. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Information.  The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offenses to which he is pleading guilty, as set forth in the forfeiture allegation of the Information. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of

Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he/she already has submitted. If the Defendant fails to surrender and forfeit the assets identified for forfeiture herein, he consents to the forfeiture of any other property of his up to the amount of the value of the assets identified for forfeiture, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

9. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to

implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

10. The Defendant agrees to pay restitution to any victim(s) as ordered at sentencing, pursuant to 18 U.S.C. § 3663(a)(3). The Defendant agrees that the restitution amount may include restitution for all losses caused by the Defendant's criminal conduct, even if such losses resulted from crimes not charged, crimes that were not the basis of a count of conviction, or conduct not admitted by Defendant in the factual basis.

11. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding

$1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

12. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The

Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

13. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

14. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

15. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

16. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this

Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CARLTON S. SHIER IV
UNITED STATES ATTORNEY

Date: 1/15/25   By: _____
Erin M. Roth
Assistant United States Attorney

Date: 1/2/25   _____
Serafin Bayona
Defendant

Date: 1/2/25   _____
William Butler
Attorney for Defendant

_____   5-7-2025
Gregory F. Van Tatenhove
U.S. District Judge

9