<pre>
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
 2                    CENTRAL DIVISION LEXINGTON

 3   UNITED STATES OF AMERICA,

 4        Plaintiff,

 5                                   Docket No. 5:25-CR-3
     VS.                             At Frankfort, Kentucky
 6                                   Wednesday, May 7, 2025
                                     2:34 p.m.
 7   SERAFIN BAYONA,

 8        Defendant.
                              - - -
 9        TRANSCRIPT OF SENTENCING PROCEEDINGS BEFORE
       UNITED STATES DISTRICT JUDGE GREGORY F. VAN TATENHOVE
10                            - - -

11   APPEARANCES:

12   For the United       ERIN ROTH
     States:              U.S. Attorney's Office, EDKY
13                        260 West Vine Street
                          Suite 300
14                        Lexington, Kentucky  40507-1612
                          (859) 685-4872
15
     For the Defendant    WILLIAM M. BUTLER, JR.
16   Bayona:              500 West Jefferson Street
                          Suite 1520
17                        Louisville, Kentucky  40202
                          (502) 582-2020
18
     Federally-certified
19   Spanish Court
     Interpreter:         Roberto Hernandez
20
     Court Reporter:      SANDRA L. WILDER, RMR, CRR
21                        Official Court Reporter
                          313 John C. Watts Federal Building
22                        330 West Broadway, Suite 327
                          Frankfort, Kentucky  40601
23                        (859) 516-4114

24
          Proceedings recorded by mechanical stenography,
25     transcript produced by certified court reporter.
</pre>

1              (*Proceedings commenced at 2:34 p.m. in open*
2  *court.*)

3              THE COURT:  Thank you.

4       Good afternoon, ladies and gentlemen.

5       Madam Clerk, if you'll call the pending case, please.

6              COURTROOM DEPUTY:  Yes, Your Honor.

7       Lexington Criminal Action 25-CR-3, United States of
8  America versus Serafin Bayona.  This matter is being called
9  for sentencing, Your Honor.

10             THE COURT:  Thank you.

11      We are providing interpretation services for the
12 defendant at this proceeding.  Would the interpreter please
13 state your appearance.

14             FEDERALLY-CERTIFIED COURT INTERPRETER:  Good
15 afternoon, Your Honor.  Roberto Hernandez,
16 federally-certified court interpreter.

17             THE COURT:  Mr. Hernandez, as always, thank you
18 very much for your service.

19      And then, Counsel, will you state your appearances,
20 please.

21             MS. ROTH:  Good afternoon, Your Honor.  Erin Roth
22 on behalf of the United States.

23             THE COURT:  Ms. Roth.

24             MR. BUTLER:  Good afternoon, Your Honor.  For the
25 record, my name's William Butler.  I represent Mr. Bayona

1  who's seated to my right in custody.

2      THE COURT:  Mr. Butler, always good to have you in

3  federal court as well.

4    Mr. Bayona, we are providing interpretation services to

5  you today.  If at any time that's not effective, will you

6  interrupt us and let me know so that we can make technical

7  corrections or otherwise so that you can understand these

8  proceedings?

9      THE DEFENDANT:  Yes.

10      THE COURT:  All right.  And you understand, sir,

11  that this proceeding is to impose a sentence in your case?

12      THE DEFENDANT:  Yes.

13      THE COURT:  And at any time during this proceeding

14  you'd like to seek counsel from your lawyer, you can do so

15  and you can do so confidentially; we'll provide

16  interpretation for you.  Do you understand that, sir?

17      THE DEFENDANT:  Yes.

18      THE COURT:  One of the things that was prepared

19  for this proceeding was a document called a presentence

20  report.  And I want to make sure you got a copy of that

21  report, and that it was interpreted for you, or translated

22  for you.  Did that occur?

23      THE DEFENDANT:  Yes.

24      THE COURT:  All right.  And I also want to make

25  sure you feel like you've had enough time to sit down with

1  your lawyer, ask Mr. Butler questions, get all of your

2  questions answered about this case.  Did that occur?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Okay.  Well, excellent.

5      Ms. Roth, I know the government would have received a

6  copy of that report.

7      Do you have any objections to any of the information

8  that's contained in it?

9           MS. ROTH:  We do not.

10          THE COURT:  And then, Mr. Butler, do you have any

11 objections to bring to my attention?

12          MR. BUTLER:  No, Your Honor.

13          THE COURT:  I'm going to adopt and accept the

14 findings that are contained in that presentence report.  I'm

15 going to specifically find that the recommended sentence in

16 the report was correctly calculated, and then we'll file

17 that in the record.  It has confidential information in it,

18 health-related information, for example.  We do not make

19 that public.

20     If there were to be an appeal, those judges and lawyers

21 and parties would have access to it, but otherwise, it's not

22 publicly available.

23     There's a plea agreement in this case, and because of

24 the nature of the plea agreement, it requires me to approve

25 the plea agreement.  And I'm not going to do that until

1  after I've heard argument and considered the allocution from

2  the defendant.  Because once I agree to this plea agreement,

3  then the sentence that is contemplated in the plea agreement

4  will be the sentence in this case.  We refer to that as a

5  binding plea agreement.

6      And my practice is to hear the arguments, listen

7  carefully to what you have to say to me.  Mr. Bayona, you

8  have a right to do that.  You don't have to, but you have a

9  right to make a statement.  And then I'll make a decision of

10  whether or not to approve the plea agreement.  And in doing

11  that, then will be bound by the agreed upon sentence in this

12  particular case.

13      I do think we can probably take the motion for the

14  third level and address that since it was contemplated in

15  the presentence report.

16          MS. ROTH:  We would so move at this time, Your

17  Honor.

18          THE COURT:  Your lawyer has probably explained to

19  you, sir, that if you'd gone to trial and you'd been

20  convicted at trial, the recommended sentence in this case

21  would have been even higher.  And that's important, because

22  that's one of the factors I consider in whether I accept the

23  agreement of the parties as to what the sentence should be.

24      So you get credit for accepting responsibility for your

25  criminal conduct.  That was included in your presentence

1    report.  And I just want to assure you, you've gotten full

2    credit in terms of the recommended sentence with regard to

3    accepting responsibility for your conduct.  Do you have any

4    questions about that?

5              THE DEFENDANT:  No.

6              THE COURT:  Any time a judge makes a decision

7    about a sentence, he or she considers seven different

8    factors.  I'm going to let Ms. Roth address those factors in

9    support of the sentence that's been agreed to by the

10   parties, and then Mr. Butler will get a chance to do that.

11   And then as I say, you'll get an opportunity to make a

12   statement, if you choose.  Do you understand how we're going

13   to proceed?

14             THE DEFENDANT:  Yes.

15             THE COURT:  All right.  Ms. Roth.

16             MS. ROTH:  Your Honor, this case is one that is

17   extremely serious in the ramifications that it has had,

18   particularly for the victims in this case.

19        As the Court mentioned, this is a binding plea

20   agreement.  The PSR range is 108 months to 135 months, and

21   the binding plea agreement is for 135 months.  So it is a

22   guideline sentence that has been agreed to by the parties.

23   And it's a sentence at the top of this guideline range,

24   which is appropriate for a number of reasons in this

25   particular matter.

1    In this case, the defendant has pled guilty to

2 financially benefiting or receiving anything of value from

3 participating in a forced labor venture.

4    And the facts of the plea agreement generally set forth

5 how the operation functioned, which was that this defendant

6 would assist in loaning money to people from Mexico who

7 wanted to come to the United States.  He himself was not

8 here legally.  And he would make those loans to people, and

9 then he would assist in arranging for smuggling of those

10 individuals across the border, at which point, they would

11 then be transported to Kentucky.

12    Mr. Bayona operated numerous houses here in Lexington,

13 Kentucky, which would house the people who came here.  And

14 once they were here, he would charge them for just about

15 anything that you can imagine.

16    So he would charge for housing, he would charge for

17 transportation, he would charge for papers, he would charge

18 for cleaning services, he would charge for food.  And the

19 amounts that he was charging were inconsistent with what I

20 would call market rate.

21    These were houses where there might be a three-bedroom

22 home with 14 people that he would have there, each paying

23 $500 to $700 in rent.

24    The conditions were not favorable for the people who

25 were here.  And if the people wanted out of this agreement,

1  wanted to stop, there wasn't a way for that to happen.

2      Mr. Bayona would use threats to both the people who

3  were here and also to their family.  And I think that was

4  primarily his most effective method of controlling the

5  victims in this case, was via threats to family members

6  still in Mexico.

7      The victims in this case that the United States spoke

8  with are petrified.  They're petrified to this day of being

9  discovered and their identities being known because they are

10  worried about violence coming to themselves or their

11  families as a result of providing information in this case.

12      As the Court knows from the factual basis we include in

13  the plea agreement, was one victim in this case, a gun was

14  put to his head.  He was told that he needed to continue

15  working to be able to pay for the loans that he owed.

16      When search warrants were executed at the various

17  locations that were operated and maintained by Mr. Bayona,

18  over $50,000 in cash was seized.  This was, make no mistake,

19  a very profitable venture for Mr. Bayona.  And like I said,

20  he operated it using threats of force and violence to

21  continue to, I say encourage, but it was more than that, to

22  force compliance by the people who got caught up in this

23  operation.

24      So in this case, we certainly think that the

25  recommended sentence, which again, is a guideline range

sentence is appropriate in this case.  As I said, it's an extremely serious offense.

Mr. Bayona had some criminal history.  He obviously has a history of being in this country illegally.  But the most important case here, again, is the impact that this has had both on the community here and also the victims themselves.

We certainly want to encourage deterrence and discourage anyone else who may think that the profit that is possible from operating in this way is worth the legal jeopardy that they would be putting themselves in.

So in this case, we would request that the Court accept the plea agreement and impose the sentence that was recommended.

We have also agreed with defense counsel on an amount of restitution, which is $52,287.  That will be split amongst identified victims that we're not going to identify on the record because of their fear for their safety.  But my understanding is that there's no objection to that restitution by the defendant.

THE COURT:  Thank you, Ms. Roth.

Mr. Butler.

MR. BUTLER:  Thank you.

Your Honor, we've heard the United States tell the Court the facts of this case, and there's no disagreement there.

1     Each of the two counts that my client has entered a
2 guilty plea to carry the possibility of 20 years in prison.
3 This plea agreement between the parties has been negotiated
4 over several -- I could say more than several months.
5     Mr. Bayona has been incarcerated more than a year while
6 the case has been ongoing and we've been receiving
7 discovery, we've been negotiating with the United States.
8 And we believe that the agreed upon sentence is appropriate
9 and sufficient to meet the goals of sentencing, and I'd ask
10 the Court to pronounce the sentence as we've agreed to.
11 Thank you.
12          THE COURT:  Thank you.
13     Mr. Bayona, is there anything you'd like to say at this
14 time?
15          THE DEFENDANT:  Again, I know that I am in a
16 country where I don't understand the laws of the country.
17     Being here I have realized that the United States
18 government, and as I told you the first time I was here
19 before you, you are what I would consider a fair person.
20 But sometimes the laws of the United States offer deals to
21 plead, and one has to accept them for fear of what might
22 happen to one's children.
23     As I told you early on in the case, I tried to meet
24 frequently with my attorney, but that did not happen.  He
25 didn't give me the full discovery, only pieces of it.

1    I said before that I was not involved in what the
2  United States Attorney is saying that I was involved in, but
3  for fear of spending many years.
4    So I accept this agreement for two reasons, because I'm
5  leaving behind a one-year-old son and a four-year-old
6  daughter.
7    I could fight this case, but there's no guarantee of
8  what will be the outcome.
9    I've heard that there are people that are talking
10 against me.  Well, as a money lender, there will always be
11 people that talk against you, so they might be able to not
12 pay the money back.
13    I asked for all the discovery; I wanted to see it, and
14 I wanted my attorney to fight this case vigorously.  What
15 the United States Attorney just read places me in a position
16 where you might think that I am the worst kind of person.
17    The first attorney that was appointed, he didn't visit
18 me for months, so I had to look for money to hire an
19 attorney.
20    Also, that attorney filed a motion saying that when we
21 did meet, we couldn't understand each other, but we were
22 speaking in Spanish.
23    And then he filed another motion saying that he wanted
24 out, so I had to look for an attorney.
25    And people at the jail would ask me, "Why weren't you

1    indicted," and they kept asking me, "Why weren't you

2    indicted?"  And I started thinking that it -- perhaps it was

3    because they were making this case larger than it was.

4         I was in jail for seven months with no help from my

5    attorney.  He or she would only come to ask me questions,

6    and then file that motion to request additional time.

7         I wanted to have a good attorney that would fight this

8    case at a hundred percent effort and show me all the

9    discovery.

10        For example, there were some things that seemed kind of

11   strange to me.  When I was detained, why did the feds drive

12   my vehicle to my home?  And there were many other things.

13   But then I realized, Well, there's really nothing to do

14   here.  I can't fight this.

15        So I wanted to say all this because there are people

16   that prefer to simply not say anything.

17        But yes, I realize that I deserve some time, but not

18   the time that they want to give me.

19        So when I received the document from probation, I --

20   accept the plea agreement because there's nothing I can do.

21   But I do want a full investigation because just because

22   somebody says that I used a pistol, that's something that I

23   will not accept, or that the money that was found was for

24   this or for that, I won't accept that.  They're giving me no

25   other options.

1    Also, my attorney just told me that with what I am
2  stating right now, that agreement is going to go away.  But
3  then what about the laws of this country?  What about
4  showing me all the proof?  I mean, I have many questions and
5  I feel I had the need to let you know.  That's all.
6          THE COURT:  All right.  Well, thank you very much.
7    Counsel, approach please.
8            (Bench conference)
9          THE COURT:  Well, I want to do a couple of things.
10  I want to let you respond on the record about the discovery
11  and that type of thing, create a record on that.  So go
12  ahead and do that, and then I've got a couple of other
13  matters.
14          MR. BUTLER:  Okay.  I spent -- I probably spent
15  $3,000 bringing interpreters in going to see this guy every
16  time he wanted to see me.  This is obviously a --
17          THE COURT:  Speak up just a little bit.
18          MR. BUTLER:  This is obviously a transaction
19  between the United States and us.  This was an information.
20  And the reason it was an information, is it was negotiated.
21  He was fully aware of what was going on; he knew.  I told
22  him what would happen if the United States indicted him on
23  all the things he had been part of it.
24          THE COURT:  And on the discovery issue?
25          MR. BUTLER:  I provided him all the discovery.

1  And most times he said he didn't want me to give it to him.

2          THE COURT:  Okay.

3          MR. BUTLER:  I mean, we brought it into the jail,

4  went over it in the jail, and then he wouldn't take it back

5  to his cell because he said he didn't want other people to

6  see it.  I mean, so, I brought all -- I've done this for 35

7  years.  This is just ...

8          THE COURT:  I understand.

9      So my guess is that had the government heard his

10 allocution before seeking the third level for acceptance,

11 you might not even have sought the third level.  I mean, I

12 might really kind of be dealing with a guideline that's even

13 higher.

14         MS. ROTH:  I mean, I certainly think it would be

15 appropriate to remove this.  Of course, this is a binding

16 plea, and so if I could have -- if that wouldn't have an

17 affect on his ultimate sentence if the Court would accept

18 it, the United States would not be moving for the third

19 level based on the information that he just gave me.

20         MR. BUTLER:  I'll withdraw from the case.  The

21 outrageous -- the things that he said.  This Court knows

22 I've been here --

23         THE COURT:  Oh, yeah, I understand kind of the

24 dynamic here.

25     Of course, I recall his plea, and I felt like he kind

1  of crossed the line in terms of the factual predicate.  If

2  he had said the things at his plea that he said today, I

3  wouldn't have accepted his plea.

4          MS. ROTH:  Right.

5          MR. BUTLER:  Right.

6          THE COURT:  And so that's a little bit of a

7  conundrum.

8      The other challenge, which I'd like the government to

9  speak to is, you're here with a binding plea because you

10 have proof problems, not because of anything the

11 government's has done, because you have witnesses that don't

12 want to testify.

13         MS. ROTH:  I have witnesses who I think we could

14 get to testify.  I don't know if they all would be able --

15 that we'd be able to get all of our witnesses here to

16 testify, but they are legitimately petrified.

17         THE COURT:  I can imagine.

18         MS. ROTH:  They are all -- they are fearful and

19 they are frightened, and they were in favor of this

20 resolution, in particular because it would not require their

21 identification publicly, and it would not require them to

22 even testify in the presence of the defendant.

23     They are particularly fearful, as I stated, for their

24 families in Mexico.  And as the Court's aware, there's

25 limited action that we can take to -- we can do lots of

1 things to try to protect the witnesses that are here, but

2 the families in Mexico are particularly concerned for all of

3 our victims.

4      As the Court stated at his plea, he did accept

5 responsibility for all of the things he's now saying he did

6 not do.

7      The facts about the pistol are included in his factual

8 basis.  The Court made sure to get on the record that he

9 agreed with the facts that were set forth there.

10      He is certainly, I think, saying today things that are

11 inconsistent with things he already said.

12      And I would like to put on the record that I do know

13 Mr. Butler received multiple rounds of discovery from us.  I

14 do know he went to the jail because we discussed it

15 afterwards.  We met separately.  We have been to the jail on

16 three occasions to meet with Mr. Bayona to discuss the

17 evidence.

18           MR. BUTLER:  We have.

19           MS. ROTH:  And where we generally followed a

20 reverse proffer when we were showing him some of the

21 evidence that we have and to discuss with him.

22      He has consistently responded with, you know, "I didn't

23 know it was illegal," which was a similar thing to what he

24 said at his actual plea hearing.  And as we discussed, was

25 that you don't actually have to understand what the law was,

but you did have to admit to the facts that would violate
the law, and he did that.  And so this is certainly
something different than what he has said before.

THE COURT:  Well, here's how I'd like to proceed.
I think -- I'm going to go back -- this is all on the
record, of course, but I want to go back on the open record
and I think -- I don't want to get you into a position where
in the present kind of -- I've brought you here to the bench
because I don't want to get into a situation that's
confrontational between you and your client or get in the
way of that.  I want you to make sure you've created a
record, though, in terms of exactly what you've done.

So I don't need you to do that again on the open
record.  I'm not sure that's going to benefit kind of this
proceeding or benefit your client.

MR. BUTLER:  And my other problem is, of course,
the attorney/client privilege --

THE COURT:  Of course.

MR. BUTLER:  -- and I've got to be careful.

But it's -- I think the record shows that he had a safe
and the gun was in the safe, and it was his safe.  So I
don't think I'm --

MS. ROTH:  I don't think that we need to get into
necessarily the specifics of the discovery.  But it is true
that a gun was located in the safe that he had admitted

1    during his inter -- his interview that he was the sole

2    person who had access to that.

3         He also had an office in one of his homes where the

4    desk had a pistol holder underneath the desk and --

5              THE COURT:  Well, and, of course, that -- the

6    gun's not an element in this trial.

7              MR. BUTLER:  No.

8              MS. ROTH:  It's not.

9              THE COURT:  But it's an important part of the

10   factual predicate.

11             MR. BUTLER:  But as part of the negotiation, the

12   United States wanted to charge him with being a prohibited

13   person.  That's not in the indictment.  I mean, this is

14   not -- I didn't just lie down on the floor and ...

15             THE COURT:  No, nobody, nobody thinks that's what

16   happened here.  I just -- particularly as it relates to kind

17   of the discovery, I wanted to make sure that you've stated

18   on the record that you actually did provide all the

19   discovery.  And the government's then said, "Not only that,

20   we provided some discovery and we met with the defendant as

21   well."

22        So here's what I think we should do on the open record,

23   is I think I'll turn to you next, and I'm just going to kind

24   of ask the question, "How do you respond to the allocution?"

25   We don't typically do that, but have you respond to the

allocution, and ask whether you -- the government persists

in its argument to approve the plea agreement.

And I'm just keenly aware that -- you know, I'm not a

judge who says no binding pleas, right?  I typically am very

deferential to the government, and for good reason, because

you kind of know the challenges of your case.

I'm not worried about your ability to take this to

trial or your desire to take it to trial or your commitment

to take it to trial, none of that.  I know you've thought

long and hard about whether this is the most just response.

And so I don't think you suspected he would make the

kind of statement he did.

I don't think you suspected this, as defense counsel,

he would make this statement as he did --

MR. BUTLER:  And I didn't either.

THE COURT:  So I just want to kind of button up

the record and make sure I understand kind of where the

government is in terms of kind of where they -- what they

were urging the Court to do, and then I'll make an

independent decision.

MR. BUTLER:  Some of the stuff he said related to

his CJA counsel --

THE COURT:  He did.

MR. BUTLER:  -- but he didn't really --

THE COURT:  Well, but I understand that,

1  Mr. Butler.  You just need to understand -- and I'm not --

2  and it's always an awkward spot when a defendant, you know,

3  starts to take on his or her counsel, particularly in a

4  retained situation.  And I'm not trying to get between you

5  and your client.  I don't mean for you to get on the record

6  in a way that, you know, makes it --

7           MR. BUTLER:  Sure.  Understood.

8           THE COURT:  -- makes it appear that you haven't

9  sometimes conflicted with your client.  I don't think any of

10  that's the case.  I just want to -- he made statements,

11  factual statements about --

12           MR. BUTLER:  Yeah.

13           THE COURT:  -- and that type of thing.

14           MS. ROTH:  I do think it's worth putting on the

15  record as well that, you know, he talks about he had no

16  choice; that's easily not true.  I do think that he was told

17  factually correctly that if he were to be indicted, there

18  were several additional charges that would be brought, as

19  well as the two that he agreed to plead guilty to in this

20  case, and that his time may certainly be longer.  So I

21  suspect that's part of his statement, "that I had to do

22  this."

23           THE COURT:  Right.

24           MS. ROTH:  I think it was just a choice that he

25  made that he did not want to be looking at the longer time,

1  but certainly, there was no other types of force.  It's

2  factually accurate statements that there were additional

3  crimes that we believe were committed here that we would

4  plan to charge if we were to indict him on all of the

5  conduct of which we're aware.

6           THE COURT:  All right.  Anything -- I thought this

7  might pertain to some matters related to your reputation.  I

8  thought it might pertain to some matters related to the

9  investigation, so I wanted to do this at the bench, rather

10  than in open court.

11      Anything else you want to say here?  We're going to

12  give both sides a chance to --

13           MS. ROTH:  I do think that we have Press in the

14  room.

15           MR. BUTLER:  And there's other charges here.  You

16  mentioned to me the multiple identity thefts.

17           THE COURT:  Yeah, I think if they have a case

18  going forward, depending on how they choose to proceed as

19  well.  We'll see where that goes.

20           MR. BUTLER:  Okay.

21           MS. ROTH:  Thank you.

22           *(This concludes the bench conference.)*

23           THE COURT:  All right.  We've addressed the more

24  confidential matters at the bench.  But I want to go back on

25  the record, and let me turn next to the government.  And in

1  light of the allocution and some things that were said, I

2  want to make sure I'm clear in terms of the government's

3  position with regard to whether I should accept the plea

4  agreement.  And, of course, in doing that, it will result in

5  a binding plea and a specific sentence, a top of the

6  guideline sentence in this case going forward.

7      So let me hear from you please, Ms. Roth.

8          MS. ROTH:  Your Honor, the United States would

9  request that the Court accept the plea agreement as we've

10  discussed.

11     This defendant pled guilty at a previous hearing in

12  which he admitted to the fact that he appears now to be

13  contesting.  He was told at that time, "Once you plead

14  guilty, you can't just undo the guilty plea."

15     As I mentioned previously, the defendants in this case

16  are afraid, and this was a just resolution, that the United

17  States still believes is a just resolution, and we would ask

18  the Court to continue to move forward after making a record

19  regarding the claims made by the defendant.

20          THE COURT:  All right.

21     Anything else, Mr. Butler?

22          MR. BUTLER:  Just, Your Honor, that the government

23  has provided me through the course of the case with all the

24  discovery.  I went to the jail numerous times and discussed

25  it with an interpreter with my client.  I just wanted to put

1   that on the record.

2          THE COURT:  All right.  Well, as I say, any time a

3   judge considers imposing a sentence, there's seven different

4   factors that are considered.  And, Mr. Bayona, I want to

5   just explain each of those factors to you and how I'm

6   applying them in this case, and then make my decision about

7   whether or not I should accept and approve the plea

8   agreement, and that plea agreement will result in a specific

9   sentence in your case.

10         I do have a recommended sentence in front of me; it's

11  108 months on the low end and 135 months on the high end.

12  The plea agreement contemplates the 135-month sentence.

13         That reflects that you were allowed to plead guilty to

14  two counts related to the conduct which you admitted to at

15  the time I accepted your guilty plea.

16         The statutory maximum for those two counts is 20 years

17  in prison.  And in our system, the government, if they felt

18  they had the proof, could have sought additional counts in

19  this particular case.

20         But in a careful negotiation with your lawyers, they

21  ended up allowing you to plead guilty to two counts, rather

22  than seeking additional counts.  And they've agreed to a

23  sentence that's within the range that would be recommended

24  for anybody who admitted the facts that you admitted, not

25  just you.  The way our system works is there's a

1  recommendation that would apply to anybody who had engaged

2  in the conduct and admitted to the facts that you have

3  admitted to here.

4      The second factor I consider are certain policy

5  statements that are related to that recommendation.  I

6  always consider those to the extent that they apply.

7      And that brings me to the third factor, and that is

8  whether this sentence that's being recommended adequately

9  reflects the seriousness of the crime.

10     Now, I take your statement very seriously.  The legal

11  term for it is "allocution."  It's provided for in the law.

12  You have a legal right to make the statement that you made

13  today.  But we don't put you under oath.

14     You've said things today that conflict with what you

15  said at the time that you pled guilty.  You were under oath

16  that day.  And, you know, I have to give some consideration

17  and thought to your attempt to lessen the seriousness of the

18  facts that you've already agreed to and pled guilty to at

19  your plea.

20     This is an insidious kind of crime because it takes

21  some of the most vulnerable people in our communities and it

22  takes advantage of them.

23     The facts in your plea agreement, which you signed and

24  under oath you agreed to, set out in great detail the

25  conduct that you engaged in, the fees that you charged, the

circumstances around which these victims were brought to the United States illegally, and they were harbored in a way that took advantage of them, and put them in harm's way both emotionally and physically.

I've been on the bench for 20 years. And during that time I've actually traveled all over the world teaching other countries about the problems associated with human trafficking. This wasn't charged as a human trafficking case, but probably could have been, given the facts that are present in this particular case.

And one of the things I say to my colleagues around the world is this isn't just a problem in your country. It can be a problem in our country as well.

And what's interesting in terms of again, related to the seriousness of the crime, and this relates also to the nature and circumstances of this conduct, is your story.

And I'm struck by the effort you made, kind of rather extraordinary effort you made to come to this country illegally because of the opportunity you perceived in this country. And then you monatize that longing and desire amongst others, who out of desperate circumstances make desperate choices, and you took advantage of them, knowing full well the risks associated with it, the difficulty associated with it, and how vulnerable people are when they're desperate.

1    There needs to be a significant period of incarceration

2  in this case.  In this case the recommendation is over ten

3  years, because this is a serious crime.  And the way we

4  promote respect for the law in our country and the way we

5  deter others from engaging in this conduct is as a community

6  and as a society and as the judge who's going to impose a

7  sentence in this case, we make sure that individuals who

8  engage in the conduct are significantly held accountable.

9  And that's one of the primary reasons that I think this long

10 sentence is appropriate.

11    Now, this isn't a case in which you should be

12 incarcerated to protect the public from your other crimes.

13 We know as a person who's here illegally, you'll be sent

14 back and deported as well.

15    This is not a case that presents with serious addiction

16 issues or other issues that need rehabilitation, although

17 you will be certainly provided with appropriate substance

18 abuse treatment, appropriate vocational training; I

19 certainly will recommend those.  It will be the BOP to

20 decide what you qualify for in those particular

21 circumstances.

22    And then finally under this factor, there has to be a

23 just punishment.  The way I explain that is you've engaged

24 in conduct that's harmed us all, not just these victims who

25 felt very specifically the harm of your conduct, but all of

1  us.  We don't want to live in a community that's
2  destabilized by this kind of behavior in which way too many
3  victims are living in the circumstances that are crowded and
4  unhealthy with very little way of creating any kind of
5  independent life given their financial servitude to the
6  person who arranged to bring them here.
7       You owe our community a debt before you go back to your
8  home community.  And the way you pay that debt is that we'll
9  take your liberty away from you for a significant amount of
10 time.
11      And that brings me to the next factor, which requires
12 me to think very specifically about the person who's before
13 me.  And I want to talk about the nature and circumstances
14 of the conduct.
15      And you've refuted some of that here today, and I find
16 that disappointing and troubling.  I don't think it's a
17 reason not to approve what you've already agreed to, you
18 agreed to under oath in this particular circumstance.
19      We don't have to litigate with any certainty the issue
20 related to firearms, for example, because that's not part of
21 what you pled guilty to.  That's not a crime that you pled
22 guilty to.  You were allowed to plead guilty to a very
23 narrow set of criminal conduct.  And so you refute that
24 particular part, you know, that was included, as I recall.
25 It may have been included as part of the plea agreement, in

the factual predicate of your plea agreement which you
agreed to at that time, but now you're not so sure.  It's
not an element of the crime that you pled guilty to.  And I,
I could concede your point.  I could say, Well, all right.
Well, maybe that didn't happen, but it doesn't lessen the
seriousness of this conduct.  We know, I know from the
record, I have enough of a record to know the fear that
these victims not only have for themselves, but they have
for their families who aren't even in this country.  That's
telling, and that says a lot about the nature and
circumstance of this particular criminal activity.

    And then in terms of your history and characteristics,
it's what's perplexing to me in some ways knowing of an
on-foot, multiple-day journey through mountains to come to
this country at great sacrifice why anyone would want to
take advantage of others who are so desperate in the way
that you have.  That's deeply troubling.

    Now, I'm to consider all the options that I have
available to me, and one option is to not agree to this plea
agreement.  You can go back and negotiate a new plea
agreement with the government, or we can go to trial, which
you'll have none of the benefits of accepting the
responsibility.

    I don't have the option to -- for home incarceration or
probation.  Those aren't options that appropriately would be

1  available to me in this particular case.

2      What I'm considering and what I've considered in

3  articulating these factors, is the appropriateness of this

4  over a decade in prison to reflect your conduct.

5      You shouldn't get a harsher sentence or a more lenient

6  sentence because you're in my courtroom.  And if I approve

7  the plea agreement, it'll be a guideline sentence.  That's

8  addressed that particular factor.

9      And finally, there are victims in this case, and you

10  should be responsible for compensating for their injuries.

11  And there's an agreement as it relates to restitution in

12  this case, and these individual victims will benefit from

13  that, and I think that's appropriate.

14      So after considering those factors, I do think it's

15  appropriate to approve the plea agreement.  I have the

16  original plea agreement in front of me.  I'm going to sign

17  it at the bottom.  There's not a signature page on this

18  one -- but I'm going to -- for the Court -- but I'm going to

19  sign the bottom of this indicating that I approve the plea

20  agreement, and in doing so, will be bound by the agreed on

21  sentence in this case.

22      So I'm going to set out the sentence.  If there's no

23  legal objection to the sentence I impose, or the process

24  we've used here this afternoon to impose the sentence, it

25  will be imposed as follows:

1      Pursuant to the Sentencing Reform Act of 1984, as

2   modified by the subsequent case law, I find that the

3   following sentence is sufficient, but not greater than

4   necessary, to comply with the purposes of 18 United States

5   Code, Section 3553A.

6      Accordingly, it's the judgment of the Court that the

7   defendant Serafin Bayona is hereby committed to the custody

8   of the Bureau of Prisons to be imprisoned for a term of 135

9   months on each of Counts 1 and 2, to run concurrently, for a

10  total of 135 months.

11     I'm going to recommend that you participate in a job

12  skills and/or vocational training program.

13     I'll recommend that you participate in the substance

14  abuse treatment program.  I can't guarantee you'll be given

15  the benefit of those opportunities.  It will be up to the

16  Bureau of Prisons to make that decision.

17     I'm going to put you on a term of supervised release

18  for a term of three years, but I don't anticipate that

19  you'll be released back into the community.

20     Once you've completed your sentence, the ICE detainer,

21  which I presume to be in effect in this case, will have you

22  detained until you're ultimately deported back to your home

23  country.

24     But if for some unforeseen reason you were released

25  into the community, that within 72 hours you'd have to

1  report in person to the nearest probation office in the
2  district in which you're released.

3      And if during that three-year period you were to find
4  yourself back in the United States, you would be directed
5  not to commit another federal, state, or local crime.

6      You'd have to comply with the mandatory and standard
7  conditions that will be set forth in the judgment in this
8  case and the commitment order; those have been already
9  adopted by the Court, and comply with these additional
10 conditions:

11     You must not possess a firearm, destructive device,
12 ammunition or dangerous weapon.

13     And you must refrain from the use of any controlled
14 substances.  You'll be subject to a drug test within 15 days
15 of your release, and then at least two periodic drug tests
16 thereafter.

17     As I say, though, my expectation is that you'll be
18 deported.  And, of course, if you are, you must not re-enter
19 the United States without the permission of the Department
20 of Homeland Security, the United States Immigration and
21 Customs Enforcement, and/or the Attorney General of the
22 United States.

23     And if you do, during the effective term of your
24 supervision, that three-year term of supervision, then at
25 that point, you'll have to report to the closest probation

1  office to have service of your supervision.

2      And during this period of time again, if you're in the

3  United States, you'll have to abstain from the use of

4  alcohol, given a clear record in terms of your past, a

5  criminal record in terms of your abuse of alcohol.

6      And would also have to submit your person, properties,

7  homes, residence, vehicles, storage units, papers,

8  computers, other electronic communications or storage

9  locations, data storage devices or media or offices to a

10  search conducted by a United States Probation Officer.  And

11  if you fail to do that, it will be a violation of your

12  conditions; you could be revoked.  And you'll have to warn

13  any other occupants of any of those locations that they'll

14  be subject to search.

15      You're directed any time you're within the United

16  States not to have any contact with the victims identified

17  as Victims 1 and 2, which were the ones that were mentioned

18  in the charging document in this case.

19      And you'll be required to provide any financial

20  information to a probation officer to ensure that your

21  compliance with these conditions is being met.

22      The $52,287 in United States currency that was seized

23  from the defendant on or about April 30, 2024, which is

24  subject to forfeiture; there was a forfeiture order in this

25  case at Docket 23, shall be disbursed as restitution equally

1  to any of the victims that are identified by the United

2  States in a sealed list, which has been provided to the

3  Court.

4      Based on your financial situation, I'll waive the fine

5  in this matter.  I cannot waive the special assessment of

6  $200, which is due immediately.

7      Ms. Roth, let me see if there's any legal objection to

8  the sentence I've articulated or the process we've used

9  today to imposed sentence.

10          MS. ROTH:  No, Your Honor.

11          THE COURT:  Mr. Butler?

12          MR. BUTLER:  No, Your Honor.

13          THE COURT:  I'll order that sentence be imposed as

14  stated.

15      Now, Mr. Bayona, I'm required to notify you in writing

16  of any appeal rights that you may or may not have.  That's

17  been translated.  That document, the record will note, is in

18  Spanish, if you'll take a look at that.

19      You can keep one of these documents; it's simply a

20  notice.  Sign them both, keep one for your records, and

21  we'll file another one in the Court record.

22          *(Defendant and Counsel conferring.)*

23          THE COURT:  The defendant has signed the Notice of

24  Appeal Rights.

25      We'll further order a judgment of the conviction be

1  prepared and entered into the record, and expect that'll be

2  done promptly.

3       Mr. Bayona, have you understood these proceedings?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Do you have any questions about what's

6  occurred here today?

7            THE DEFENDANT:  No, none.

8            THE COURT:  Ms. Roth, any additional matters I

9  need to address from the United States?

10           MS. ROTH:  No, Your Honor.  Thank you.

11           THE COURT:  Mr. Butler, anything else on behalf of

12 your client?

13           MR. BUTLER:  No, Your Honor.  Thank you.

14           THE COURT:  All right.  You need to sign the

15 advice to appeal, Mr. Butler.  Let's make a copy during the

16 recess.

17           FEDERALLY-CERTIFIED COURT INTERPRETER:  Your

18 Honor, the defendant has a question for his attorney.

19           THE COURT:  Take a moment and ask a question.

20           *(Defendant and Counsel conferring.)*

21           THE COURT:  Counsel, anything else we need to

22 address?

23           MR. BUTLER:  No, Your Honor.

24           THE COURT:  All right.

25      Well, good luck to you, sir.

1        We'll stand in recess pending the next item on my

2   docket.

3                (Proceedings adjourned at 3:39 p.m.)

4                        * * * * *

5                *C E R T I F I C A T E*

6        I, SANDRA L. WILDER, RMR, CRR, certify that the

7   foregoing is a correct transcript from the record of

8   proceedings in the above-entitled matter.

9

10   /s/ Sandra L. Wilder RMR, CRR     Date of Certification:
     Official Court Reporter           May 19, 2025

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25