**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff/Respondent,**<br><br>**v.**<br><br>**SERAFIN BAYONA,**<br><br>**Defendant/Movant.** | ) ) ) ) ) ) ) ) ) ) | **Criminal Action No.**<br>**5:25-cr-0003-REW-MAS**<br>**and**<br>**Civil Action No.**<br>**5:26-cv-0182-REW-MAS** |

## REPORT & RECOMMENDATION

This matter is before the undersigned on Petitioner Serafin Bayona's Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255. [DE 40, 54]. Bayona asserts several grounds for relief, all based on claims of ineffective assistance of counsel. The United States responded contesting each ground [DE 56]. Considering the arguments of the parties as well as the record before it, the Court recommends Bayona's motion be denied for the reasons stated below.

## I. RELEVANT FACTUAL BACKGROUND

On April 29, 2024, a criminal complaint was issued charging Bayona with three counts all associated with his alleged use and abuse of forced labor. [DE 1]. Eventually, the United States filed an Information charging Bayona with two counts of financially benefitting from forced labor, both violations of 18 U.S.C. § 1589(b). [DE 17].

The binding plea agreement provides some of the details.

> Specifically, Victims 1 and 2 contracted with Bayona to pay a group of "coyotes" to facilitate their crossing the U.S./Mexico border. They were then transported to Kentucky. Upon arrival in Kentucky, BAYONA obtained fake identification papers for Victims 1 and 2 and found jobs for them. Victims 1 and 2 were required to work every day of the week and provide their checks from working to BAYONA. BAYONA charged Victims 1 and 2 $500 each for rent, $300 for their phone, $500 for food, $500 for rides to and from work, and other expenses which left very little money to be paid towards their debt. BAYONA also charged Victim 1 a fee of $1,200 dollars for obtaining a job for him.
>
> After several months of constant work, Victim 1 told BAYONA he was too tired to continue to work without rest. BAYONA then put a pistol to Victim 1's head and threatened to kill Victim 1 if he didn't work two jobs and pay off his debt. Victim 2 was present and witnessed BAYONA threaten the life of Victim 1 if he failed to continue to work to repay his debt.
>
> BAYONA also threatened family members of Victims 1 and 2, who were living in Mexico. WhatsApp messages from Bayona specifically threatened that "no matter where you or your family go I will find them," "I am going to take away what you care about most," "too bad you didn't think about your kids," and "prepare yourself because there is going to be nowhere for you to hide, not even your family in Mexico."

[DE 20, Page ID# 63-64].

Following his waiver of an indictment and guilty plea pursuant to the binding plea agreement, the Court sentenced Bayona to 135 months imprisonment on each count to run concurrently as well as three years supervised release. [DE 29].

Bayona did not appeal the guilty plea, conviction, or sentence. He timely filed his habeas petition in May of 2026.

## II. <u>ANALYSIS</u>

In total, Bayona asserts eight grounds for relief all arguing that his trial counsel, William Butler, was ineffective in defending him against these allegations.

After establishing the relevant standard for analyzing these claims, the Court will address each ground.

## A. STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Under § 2255, a federal prisoner may obtain relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A constitutional basis for § 2255 relief requires "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Any non-constitutional error must constitute a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990). A § 2255 movant typically must prove any factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*).

One class of alleged constitutional error is ineffective assistance of counsel in violation of the Sixth Amendment. The standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims. To

prevail, a movant must prove (1) that defense counsel's performance was deficient, and (2) that the demonstrated deficiency prejudiced the movant. *Id.* at 687. To establish deficient performance, a movant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. "Judicial scrutiny of counsel's performance must be highly deferential" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. A prejudice showing requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Id.* at 694-95. The Court "must consider the totality of the evidence" in assessing prejudice. *Id.* at 695. To satisfy the prejudice prong "[i]n a guilty plea context 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The movant must satisfy both prongs of the *Strickland* analysis, but courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697.

Bayona argues that prejudice should be presumed because counsel's errors amounted to "an actual or constructive denial of the assistance of counsel altogether." [DE 54-2, Page ID# 346-47 (citing *United States v. Cronic*, 466 U.S. 648 (1984))]. Prejudice is presumed under *Cronic* only where "counsel entirely fails to subject the

prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. For that presumption to apply, "the attorney's failure must be complete"; the difference between such a claim and an ordinary *Strickland* claim "is not of degree but of kind." *Bell v. Cone*, 535 U.S. 685, 697 (2002). Bayona's claims do not come close. He faults counsel for specific failings in explaining the plea and advising him about the Guidelines. Those are precisely the claims *Strickland* governs. *See id.* at 697-98. And the record shows counsel was anything but absent. He met with Bayona through interpreters, reviewed the charging document and plea agreement with him, and negotiated an agreement resolving the case on two counts. He also represented Bayona at the rearraignment and at sentencing. [DE 43, Page ID# 218-20; DE 32, Page ID# 117, 130]. The Court rejects Bayona's application of *Cronic* to these facts and reviews his claims under *Strickland* where he must show actual prejudice.

**B. <u>GROUNDS 1 & 2: LANGUAGE BARRIERS</u>**

Bayona's first two grounds overlap, so the Court addresses them together. Bayona contends that counsel "[f]ailed to ensure defendant understanding due to language barrier" and "[f]ailed to provide an interpreter nor provided translated documents." [DE 54, Page ID# 334]. He asserts that counsel did not translate documents into Spanish and used an interpreter only to induce him to waive indictment and plead guilty. [DE 54-2, Page ID# 341, 347]. He also relies on three orders extending the deadline to file an information or indictment as proof that he could not communicate with counsel. [DE 54-2, Page ID# 340-41, 348].

The record refutes both grounds. "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the

judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Thus, "a defendant must be bound to the answers he provides during a plea colloquy." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999).

Initially, the Court ordered a Spanish interpreter for "all future proceedings" at Bayona's initial appearance. [DE 4, Page ID# 20]. At rearraignment, counsel explained that he met with Bayona at the jail with an interpreter and reviewed both the information and the plea agreement with him "word for word."[1] [DE 43, Page ID# 218-19]. Bayona confirmed under oath that both documents were read to him in Spanish and that he signed the waiver of indictment and the plea agreement after each was read or interpreted for him. [DE 43, Page ID# 220, 223-24]. Indeed, Bayona concedes that counsel brought an interpreter to several meetings; he disputes only the purpose. [DE 54-2, Page ID# 341]. The extension orders likewise show the use of an interpreter, not its absence. The first two, entered before Butler appeared, attributed delay to communicating with Bayona "through the use of a translator." [DE 7, Page ID# 29; DE 9, Page ID# 38; see DE 54-2, Page ID# 339]. The third, entered after Butler appeared, cited the need to communicate "through the use of a translator and the need to translate and discuss discovery with the defendant." [DE 12, Page ID# 48].

[1] The transcript attributes this statement to "THE DEFENDANT." [DE 43, Page ID# 218]. Context makes plain that the statement was made by counsel in response to the Court's question to Butler, and Bayona does not contend otherwise.

To be sure, the colloquy was not seamless. Bayona asked for more time, said the first paragraphs the prosecutor summarized had not been read to him, and stated that "[m]any things are confusing to me." [DE 43, Page ID# 220, 230-31]. But the confusion he identified concerned the plea agreement's provisions regarding his property and his past, not the language. [DE 43, Page ID# 231]. And the process worked as intended: the Court recessed for nearly thirty minutes so Bayona could confer with counsel, with the interpreter available. [DE 43, Page ID# 231-32]. Afterward, Bayona confirmed that all of his questions had been answered and that no one had coerced him, and he ended the hearing by affirming that he understood the proceedings. [DE 43, Page ID# 233, 244]. At sentencing, he likewise confirmed that the presentence report had been interpreted or translated for him and that his questions had been answered. [DE 32, Page ID# 110-11]. Finally, Bayona cites no authority requiring written translations of documents that were read and interpreted to him. His conclusory allegations cannot overcome his sworn statements. *Blackledge*, 431 U.S. at 74. Bayona has not shown deficient performance.

Nor has he shown prejudice. Bayona must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Campbell*, 686 F.3d at 357 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). He never claims that, with different interpretation or written translations, he would have gone to trial. The only prejudice he articulates concerns the Sentencing Guidelines [DE 54-2, Page ID# 349], which the Court addresses under Ground Seven.

Thus, the Court recommends that Grounds One and Two be denied.

### C. GROUNDS 3, 4, & 5: EXPLANATION OF THE PLEA AGREEMENT, BINDING PLEA, AND WAIVER OF INDICTMENT

Grounds Three, Four, and Five each fault Butler for failing to explain part of the plea. Ground Three concerns the "terms or consequences of the plea agreement," including immigration consequences. [DE 54, Page ID# 334]. Ground Four concerns "what a binding plea under Rule 11(c)(1)(C) means." [DE 54, Page ID# 334]. Ground Five concerns the "right to indictment or what waiving indictment means." [DE 54, Page ID# 334-35]. Bayona adds that neither he nor counsel understood the essential elements of the offense, and that the Court never questioned him directly about waiving indictment. [DE 54-2, Page ID# 342]. As with the prior grounds, the plea record answers each claim.

Ground Three. As discussed above, counsel reviewed the plea agreement with Bayona "word for word" through an interpreter. [DE 43, Page ID# 219]. That agreement set out the elements of the offense, the factual basis, the statutory penalties, and the agreed sentence. [DE 20, Page ID# 62–64]. At rearraignment, the prosecutor summarized each paragraph on the record. Bayona then, as also discussed above, had additional time to ask counsel his remaining questions and confirmed they had been answered. [DE 43, Page ID# 225-30, 233]. The prosecutor recited the elements of the offense. Bayona agreed that the United States had enough evidence to prove them beyond a reasonable doubt and that the facts in the plea agreement were true. [DE 43, Page ID# 239-40]. In short, his plea "serves as an admission that

he committed all of the elements of the crime." *Curry v. United States*, 39 F. App'x 993, 994 (6th Cir. 2002).

When asked to describe his conduct in his own words, Bayona stated that he "was not really aware that [he] was committing a crime" because he did not "know the laws of this country." [DE 43, Page ID# 241]. That statement does not reflect a misunderstanding of the elements. The Court addressed it on the spot, noting that "ignorance of the law is no defense" and that it was enough for Bayona to admit the conduct he engaged in. [DE 43, Page ID# 241-42]. Bayona had already affirmed that the facts in the plea agreement were true. The Court then found his plea knowing, voluntary, and supported by an independent basis in fact containing the essential elements of the offenses. [DE 43, Page ID# 240, 243].

The immigration component fares no better. Counsel "must inform her client whether his plea carries a risk of deportation." *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010). Bayona was so informed. At his initial appearance, the Court covered "standard collateral consequences and notification rights tied to non-citizen status." [DE 4, Page ID# 20]. The plea agreement warned that his offense may result in his removal. In it, Bayona affirmed that he "wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States." [DE 20, Page ID# 65]. The prosecutor recited that provision at rearraignment. [DE 43, Page ID# 227].

Ground Four. The plea agreement itself states that, under Rule 11(c)(1)(C), the parties "agree to a specific sentence," which "binds the Court upon acceptance of

this plea agreement." [DE 20, Page ID# 62, 64]. The prosecutor explained the same at rearraignment. [DE 43, Page ID# 225-26]. The Court then explained that, if it approved the agreement, 135 months would be Bayona's sentence. If it did not, Bayona would not be bound and could enter a new plea agreement or go to trial. Bayona said he understood and had no questions. [DE 43, Page ID# 236-37]. The Court explained the binding nature of the agreement again at sentencing. [DE 32, Page ID# 111-12]. Again, Bayona affirmed his understanding of all of this. To the extent Bayona argues the binding plea locked him into a higher sentence, the Court addresses that argument under Ground Seven.

Ground Five. The record contradicts Bayona's claim that the Court never questioned him directly. The Court explained the grand jury process and the alternative of proceeding by information. The Court told Bayona that he had "a right to make them go to the grand jury" and was "the only person that can make that decision." [DE 43, Page ID# 220-21]. Bayona confirmed that he had talked with counsel about proceeding this way. When asked whether anyone had pressured him, he answered: "Yes, it was explained to me, and I believe that's what is in my best interest." [DE 43, Page ID# 221-22]. Bayona also confirmed that he signed the written waiver after it was read and explained to him. [DE 43, Page ID# 223]. That waiver states that he "was advised in open court of [his] rights and the nature of the proposed charges against [him]." [DE 19, Page ID# 61]. The Court found the waiver knowing and voluntary. [DE 43, Page ID# 223].

In summary, the plea agreement, the prosecutor, and the Court each explained the very matters Bayona now says counsel did not, and Bayona confirmed his understanding under oath. *Blackledge*, 431 U.S. at 73-74; *Ramos*, 170 F.3d at 566. For Grounds 3, 4, and 5, Bayona has not shown deficient performance.

Nor has he shown prejudice. *See Campbell*, 686 F.3d at 357. Bayona never claims that a fuller explanation of the plea agreement, the binding plea, or the indictment waiver would have led him to insist on trial. On the immigration issue, the contemporaneous evidence points against Bayona. Namely, he affirmed in writing that he wanted to plead guilty "even if the consequence is his automatic removal." [DE 20, Page ID# 65]. *See Lee v. United States*, 582 U.S. 357, 369 (2017) (directing courts to "look to contemporaneous evidence to substantiate a defendant's expressed preferences").

The Court recommends that Grounds Three, Four, and Five be denied.

### D. GROUND 6: CASE DOCUMENTS, THE CHARGING DOCUMENT, AND ALLEGED INDUCEMENT

In Ground Six, Bayona claims that counsel (1) failed to provide "critical case documents," including "a copy of the charging document"; (2) "did not explain the significance of pleading to a complaint"; and (3) "engaged in unprofessional inducement of the defendant to involuntarily waive the indictment and enter a plea of guilt." [DE 54, Page ID# 335].

As to the charging document, the record shows Bayona received the criminal complaint at his initial appearance. [DE 4, Page ID# 20]. And while Butler explained that he did not leave a physical copy of the information with Bayona, the information

was read to Bayona with an interpreter. [DE 43, Page ID# 219]. Bayona then confirmed under oath that he recalled the meetings where Butler brought him the information, explained the crimes charged, and had the documents read to him in Spanish. [DE 43, Page ID# 220]. Beyond the charging document, Bayona never identifies what "critical case documents" he lacked or how having a physical copy of any document would have changed his decision to plead guilty. Such a "conclusory statement" is "wholly insufficient to raise the issue of ineffective assistance of counsel." *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000).

The second subpart fails on its premise. Bayona did not plead guilty to a complaint; he pleaded guilty to Counts 1 and 2 of the information. [DE 17; DE 43, Page ID# 243]. To the extent he means that counsel failed to explain the significance of proceeding by information, the Court already detailed that issue above in Ground Five.

The third subpart is also without merit. Bayona swore that no one pressured him into waiving indictment and that proceeding by information was "in my best interest." [DE 43, Page ID# 221-22]. He likewise swore that no one coerced him into signing the plea agreement and that he signed it "under [his] own free will because [he was] guilty." [DE 43, Page ID# 233]. The plea agreement itself states that his "entry into this Agreement is voluntary." [DE 20, Page ID# 69-70]. Based on these answers, the Court found both the waiver and the plea knowing and voluntary. [DE 43, Page ID# 223, 243].

Bayona told the Court he accepted the plea "because I was told that if I were to go to trial, I would lose." [DE 43, Page ID# 241]. But Butler's candid assessment of the strength of the government's case is not improper inducement. The decision to plead guilty "rests with the defendant." *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003). Bayona made that decision under oath. Generalized claims of pressure from counsel are "precisely the sort of alleged subjective impressions that cannot countervail a valid plea without more." *Byars v. Gidley*, No. 16-2485, 2017 WL 4956919, at *2 (6th Cir. July 3, 2017). Bayona's more specific complaint, that counsel overstated his exposure on uncharged firearm and identity-theft offenses [DE 54-2, Page ID# 341-42], concerns sentencing advice. The Court addresses that next under Ground Seven.

Ultimately, Bayona has not shown deficient performance. Nor does he claim that physical copies of any document, or any further explanation, would have led him to reject the plea and insist on trial. *See Campbell*, 686 F.3d at 357. The Court recommends that Ground Six be denied.

### E. GROUND 7: ADVICE ON SENTENCING GUIDELINES

Bayona claims counsel "did not explain the likely guideline range for defendant's offense levels and history nor that a binding plea locked defendant into a much higher sentence." [DE 54, Page ID# 335]. His memorandum argues that, under Amendments 612 and 613 and U.S.S.G. § 1B1.2(a), his correct guideline range was 51 to 63 months. He contends the Court was bound to sentence him within that range, and that Butler's ignorance of the Guidelines led him to accept a 135-month binding plea. [DE 54-2, Page ID# 343-46, 352-54]. He also contends counsel

overstated his exposure by advising that an uncharged firearm offense carried a five-year mandatory minimum consecutive sentence. [DE 54-2, Page ID# 341-42].[2]

The record forecloses the premise of this claim, however, because Bayona's guideline range was not 51 to 63 months. The presentence report calculated a range of 108 to 135 months. [DE 32, Page ID# 113, 130]. Bayona confirmed that the report had been interpreted or translated for him and that his questions had been answered, and he raised no objection. The Court then adopted the report and found that the recommended sentence was correctly calculated. [DE 32, Page ID# 110-11]. Bayona offers his own calculation but never engages with the one the Court adopted. Nor was the Court ever bound to any guideline range, because the Guidelines are "effectively advisory." *United States v. Booker*, 543 U.S. 220, 245 (2005). The only thing that bound the Court was the parties' Rule 11(c)(1)(C) agreement, once accepted. [DE 20, Page ID# 64].

The binding plea likewise did not lock Bayona into "a much higher sentence." The agreed 135-month term fell within the guideline range the Court adopted. [DE 32, Page ID# 113, 130]. If anything, the binding plea protected him. At sentencing, Bayona used his allocution to dispute facts he had admitted under oath. The

[2] Bayona's memorandum also faults the Court for not advising him about Amendments 612 and 613 or possible upward departures. [DE 54-2, Page ID# 349–50, 352]. To the extent he intends a freestanding Rule 11 claim against the Court, rather than a claim against counsel, he waived any collateral attack other than ineffective assistance of counsel. [DE 20, Page ID# 65]. He also did not appeal, so the claim is procedurally defaulted. *See Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). Regardless, the Court imposed the agreed sentence and applied no upward departure. [DE 32, Page ID# 130].

prosecutor then stated that, but for the binding plea, the United States would not have moved for the third acceptance-of-responsibility level. The Court observed that it "might really kind of be dealing with a guideline that's even higher." [DE 32, Page ID# 117-21]. The Court had also explained that the recommended sentence would have been higher had Bayona been convicted at trial. [DE 32, Page ID# 112].

As for any failure to explain the likely guideline range, Bayona knew his exact sentence before he pleaded guilty. The Court told him that no one could know the guideline recommendation "with any certainty" at that point. But the Court explained that Bayona's case was "different" because the parties had agreed to 135 months, which would be his sentence if the Court approved the agreement. Again, Bayona said he understood and had no questions. [DE 43, Page ID# 236-37]. Because Bayona knew the precise consequence of his plea, no shortcoming in Butler's guideline advice could have rendered that plea unknowing.

The firearm argument also fails. Even assuming counsel misdescribed the penalty for a potential firearm charge, Bayona cannot show prejudice. By Bayona's own account, the firearm offense was only one of several uncharged offenses counsel discussed with him. Bayona does not dispute the advice that each of three aggravated identity theft counts would have added a consecutive two-year term. [DE 54-2, Page ID# 341–42]; *see* 18 U.S.C. § 1028A(a)(1), (b)(2). Butler confirmed at sentencing that the United States "wanted to charge him with being a prohibited person." [DE 32, Page ID# 125]. The prosecutor confirmed at both the plea and sentencing that the

information omitted other charges the United States would have pursued by indictment. [DE 43, Page ID# 225; DE 32, Page ID# 127-28].

Most importantly, Bayona does not claim that accurate guideline or firearm advice would have led him to insist on going to trial. *See Campbell*, 686 F.3d at 357. The contemporaneous evidence points the other way. *See Lee*, 582 U.S. at 369. At the plea, Bayona explained that he was accepting the agreement because he believed he would lose at trial. [DE 43, Page ID# 241]. At sentencing, after reviewing the presentence report and its guideline calculation, he again chose the agreement: "I could fight this case, but there's no guarantee of what will be the outcome." [DE 32, Page ID# 118-19].

Consequently, the Court recommends that Ground Seven be denied.

### F. Ground 8: A More Favorable Plea

Bayona claims counsel "failed to negotiate or seek a more favorable plea" and "did not attempt to negotiate a non-binding plea." [DE 54, Page ID# 335]. Apart from the non-binding alternative, he never identifies the details of a more favorable plea. Nor does he offer any reason to believe the United States would have agreed to them. Such a "conclusory statement" is "wholly insufficient to raise the issue of ineffective assistance of counsel." *Elzy*, 205 F.3d at 886. And defendants have "no right to be offered a plea." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012) (quoting *Missouri v. Frye*, 566 U.S. 134, 148 (2012)).

The one alternative Bayona does name, a non-binding plea, would not have been more favorable. His only explanation for why the binding plea was unfavorable rests on his claim that his guideline range was 51 to 63 months. [DE 54-2, Page ID#

352-54]. As discussed with Ground Seven, that premise is wrong. Moreover, the binding plea also protected Bayona after his allocution, when the United States stated that it would not otherwise have moved for the third acceptance-of-responsibility level. [DE 32, Page ID# 117-21]. Without the binding agreement, Bayona would have faced sentencing on that record, exposed to a statutory maximum of twenty years on each count. [DE 20, Page ID# 64].

The record also reflects real negotiation, not the absence of it. Butler explained that the agreement had been negotiated over "more than several months." [DE 32, Page ID# 117]. Through that negotiation, Bayona pleaded guilty to two counts, and the United States did not bring the other charges it said it would have pursued by indictment. [DE 43, Page ID# 225; DE 32, Page ID# 127-28]. The Court described the result as a "careful negotiation" that allowed Bayona "to plead guilty to two counts, rather than seeking additional counts." [DE 32, Page ID# 130].

Finally, Bayona offers nothing to suggest that the United States would have extended a non-binding or otherwise better offer, that he would have accepted it, or that it would have produced a lower sentence. Thus, his argument also fails for failure to show prejudice. *See Campbell*, 686 F.3d at 357.

As with his prior grounds, the Court recommends that Ground Eight be denied.

## G. Request for Evidentiary Hearing

In addition to his habeas petition, Bayona has requested an evidentiary hearing. [DE 54, Page ID# 333, 336; DE 54-2, Page ID# 354].

Rule 8 of the Rules Governing Section 2255 Proceedings requires the Court to "review the answer, any transcripts and records of prior proceedings, and any

materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." The Court must hold an evidentiary hearing on any "§ 2255 motion in which a factual dispute arises." *Howard v. United States*, 485 F. App'x 125, 128 (6th Cir. 2012) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). However, where the "record conclusively shows that the petitioner is entitled to no relief[,]" *id.*, no hearing is required. *Accord Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (emphasizing that "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact") (internal quotation marks omitted).

Considering the record and arguments presented above, the Court cannot discern any dispute of fact that exists. The Court's analysis is based upon the undisputed record. For example, Bayona asks for a hearing on his language barrier and his understanding of the plea, including the waiver of indictment and the effect of a binding plea. [DE 54, Page ID# 336]. But his allegations on those points are contradicted by his own sworn statements at rearraignment and sentencing. A hearing would not change that result. Thus, the Court recommends that Bayona's request for an evidentiary hearing be denied.

## III. <u>CERTIFICATE OF APPEALABILITY</u>

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473,

484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

As detailed above, Bayona asserts eight grounds for habeas relief, all based on claims of ineffective assistance of counsel. In his first two grounds, Bayona contends that a language barrier prevented him from understanding the proceedings and that counsel failed to provide an interpreter or translated documents. Yet, the record shows that interpreters were used throughout. Bayona also confirmed under oath that the charging document and plea agreement were read to him in Spanish. In his third, fourth, and fifth grounds, Bayona argues that counsel failed to explain the plea agreement, the binding nature of the plea, and the waiver of indictment. The plea agreement, the prosecutor, and the District Court each explained those very matters at rearraignment, and Bayona affirmed his understanding at every turn. His sixth ground, concerning case documents and alleged inducement, is likewise contradicted by his sworn statements and is otherwise conclusory. For his seventh ground, Bayona rests his challenge to counsel's guideline advice on a guideline range that the record refutes. He agreed to a sentence within the range the Court adopted, and he knew that exact sentence before pleading guilty. Finally, Bayona's eighth ground never identifies a more favorable plea that counsel could have obtained. Throughout,

Bayona never claims that, but for Butler's alleged errors, he would have insisted on going to trial. Reasonable jurists could not debate these conclusions.

Accordingly, it is **RECOMMENDED** that a certificate of appealability be **DENIED** upon the District Court's entry of its final order in this matter.

## IV. CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS**:

1) The District Court **DENY**, with prejudice, Bayona's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 [DE 40, 54];

2) The District Court **DENY** a certificate of appealability as to all issues, should movant request a COA; and

3) The District Court **DENY** Bayona's request for an evidentiary hearing [DE 54].

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. See also Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen days (14) after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Entered this the 21st day of October, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY